UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RISE ST. JAMES, ET AL.                         CIVIL ACTION

VERSUS                                         NO: 20-3066

TOWN OF GRAMERCY, ET AL.                       SECTION: "A" (2)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Preliminary Injunction**

**(Rec. Doc. 14)** filed by the plaintiffs, Sharon Lavigne and RISE St. James. The

defendants, the Town of Gramercy and Steve Nosacka, in his official capacity as Mayor

of the Town of Gramercy, oppose the motion. The motion, noticed for submission on

March 31, 2021, is before the Court on the briefs without oral argument.[1]

---

[1] Oral argument has been requested by Plaintiffs who advise that they would call one witness (unidentified) at such an argument. Plaintiffs are actually requesting an evidentiary hearing because the Court does not hear from witnesses at oral argument. A motion for a preliminary injunction does not automatically trigger an evidentiary hearing. *See Gittinger v. Ramos*, 372 Fed. Appx. 486, 488 (5th Cir. 2010) (unpublished). But when the parties present a factual dispute, the courts must provide them "a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Valadez v. City of San Antonio*, No. SA-21-CV-0002, 2021 WL 411148, at *4 (W.D. Tex. Feb. 5, 2021) (quoting *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009)). When "factual matters are not in dispute, no oral hearing is required and the parties need only be given 'ample opportunity to present their views of the legal issues involved.'" *Id.* (quoting *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 769, 777 (W.D. Tex. 2001)).

As discussed at a later point in this opinion, the Court construes Plaintiffs' motion for preliminary injunctive relief as being grounded solely on their First Amendment facial challenge to the ordinance at issue. No party has identified a factual dispute pertinent to the facial challenge, which is not surprising given that a facial challenge under the First Amendment does not involve application of the disputed regulation to any particular person under any specific circumstances.

## I.      Background

Sharon Lavigne and RISE St. James have brought this action against the Town of Gramercy, Louisiana and its mayor in his official capacity only (at times collectively "Defendants") alleging violations of their First Amendment right to free speech as a result of the town's permitting ordinance that governs public marches.

RISE St. James is a faith-based grass-roots organization formed in 2018 to advocate for racial and environmental justice in St. James Parish, Louisiana. (Rec. Doc. 1, Complaint ¶ 14). The proliferation of industrial plants in the St. James Parish community is of particular concern to the organization. Sharon Levigne is the founder and president of the organization. (*Id.* ¶ 17). RISE St. James and Ms. Levigne are hereinafter referred to collectively as "Plaintiffs."

Plaintiffs' claims arise out of their efforts to oppose Amendment 5 to the Louisiana Constitution, which was on the ballot for November 3, 2020. This proposed amendment could be used by local governments to create tax incentives to encourage additional industrial plants to locate in areas of Louisiana, including specifically St. James Parish. (*Id.* ¶ 4). Plaintiffs scheduled a public march for Saturday, October 17, 2020, in order to educate the public and to make their opposition to the Amendment known to the community. (*Id.* ¶ 8). Plaintiffs had planned to march through the municipalities of Gramercy and Lutcher. Gramercy City Code Ordinance Ch. 50, Art. II, § 50-41 requires a parade permit for any parade or procession or other public demonstration in the streets or other public places. Plaintiffs therefore commenced the permit application process in accordance with local requirements in order to hold the October 17th march. (*Id.* ¶ 14).

The first step that Plaintiffs took to obtain a permit was to meet with the Mayor of Gramercy, defendant Steve Nosacka. After asking Plaintiffs to explain the nature and subject of the march, Plaintiffs complain that the mayor refused to allow the use of private cars in the march even though some of the intended participants had physical limitations that required such an accommodation. (Complaint ¶ 31). Plaintiffs were asked to return the following day for another meeting.

Plaintiffs returned to the mayor's office the following day. The mayor gave Plaintiffs the necessary permit application and indicated that Gramercy would waive the $10,000 bond required by Gramercy City Code Ordinance Ch. 50, Art. II, § 50-44(10) so that Plaintiffs could hold their march. (*Id.* ¶ 38). While the mayor refused to allow private vehicles in the march he did state that an individual needing a disability accommodation could ride in a town police car. (*Id.* ¶ 44). Plaintiffs allege that the mayor later changed his mind about the bond waiver and advised Plaintiffs by way of an email that the bond would be necessary after all. (*Id.* ¶ 48).

Plaintiffs then contacted Defendants through counsel seeking a waiver of the $10,000 bond requirement based on constitutional concerns. On Tuesday, October 13, 2020, the Town of Gramercy Board of Aldermen Council voted upon Plaintiffs' permit application and granted it in a unanimous 5-0 vote, contingent upon Plaintiffs posting the required $10,000 bond. (*Id.* ¶ 57). Plaintiffs were confused about the process for posting the bond and encountered logistical difficulties obtaining the bond within the timeframe imposed by the town. (*Id.* ¶¶ 59-65). Plaintiffs ultimately rerouted and reorganized the march through Lutcher and had to avoid the Town of Gramercy altogether because of its "onerous and restrictive" parade permitting scheme. (*Id.* ¶¶ 66-

67). Plaintiffs blame the Town of Gramercy's permitting ordinances for their being unable to express their political opinions in Gramercy. (Complaint ¶ 69). And they add that they will face the same restrictions for any future events and similarly protected speech. (*Id.* ¶ 70).

The most pertinent excerpts from the Gramercy permitting ordinance read as follows, with the provisions that Plaintiffs believe to be the most problematic emphasized:

In the Town of Gramercy,

It shall be unlawful to promote, organize or hold or assist in organizing or holding or to take part or participate in any parade or procession or other public demonstration *in the streets or other public places* unless a permit has been secured from the mayor and board of aldermen.

Ch. 50 of Gramercy City Code of Ordinances, Art. II Parade and Demonstration Permits, § 50-41 "Required" (emphasis added).

*Parade* means any parade, march, ceremony or procession of any kind, show, exhibition, pageant, demonstration or any similar display in or upon any street or other public place in the town.

*Parade permit* means a permit as required by this article.

*Id.* § 50-40 "Definitions" (emphasis in original).

A person seeking issuance of a parade permit shall file an application with the mayor and board of aldermen on forms provided, not less than four days or more than seven days before the date on which it is proposed to conduct the parade.

*Id.* § 50-43(a) "Application"

The mayor and board of aldermen shall issue a permit as required in this article when, from such other information as may otherwise be obtained, they find that:

*(1)      The schedule of the parade is such that it shall not begin before*

*the hour of 8:00 a.m. and shall not last beyond the hour of 5:00 p.m.*

(2)     The conduct of the parade will not substantially interrupt the safe and orderly movement of other traffic contiguous to its route.

(3)     The conduct of the parade will not require the diversion of so great a number of police officers of the town to properly police the line of movement and the areas contiguous thereto as to prevent normal police protection to the town.

(4)     The conduct of such parade will not require the diversion of so great a number of ambulances as to prevent normal ambulance service to portions of this town other than that to be occupied by the proposed line of march and areas contiguous thereto.

(5)     The concentration of persons, animals or vehicles at assembly points of the parade will not unduly interfere with proper fire and police protection of or ambulance service to areas contiguous to such assembly areas.

(6)     The conduct of such parade will not interfere with the movement of firefighting equipment en route to a fire.

*(7)     The conduct of such parade will not cause injury to persons or property, provoke disorderly conduct or create a disturbance.*

(8)     The parade is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays en route.

*(9)     The parade is not to be held for the sole purpose of advertising any product, cause, goods or event and is not designed to be held purely for private profit.*

*(10)    A bond of $10,000.00 has been posted and accepted.*

*Id.* § 50-44 "Standards of Issuance" (emphasis added).

Plaintiffs are mounting a facial and as-applied challenge to Ch. 50, Art. II of the Gramercy Code of Ordinances because they believe that the parade permitting scheme violates the First Amendment to the United States Constitution. Plaintiffs seek the

following relief:

A.    Declare Ch. 50, Art. II of the Gramercy Code of Ordinances unconstitutional facially and as applied, as violative of the First Amendment to the United States Constitution;

B.    Preliminarily and, in due course, permanently enjoin Defendants from continued enforcement of Ch. 50, Art. II of the Gramercy Code of Ordinances;

C.    Order Defendants to take appropriate, affirmative steps to ensure that the activities complained of herein are not engaged in again by Defendants or any of their agents or employees;

D.    Award nominal damages to the Plaintiffs;

E.    Award costs and reasonable attorneys' fees to the Plaintiffs;

F.    Award such other and further relief as the Court deems just and proper.

(*Id.* at 15-16).

This matter is scheduled to be tried to the bench on March 14, 2022. (Rec. Doc. 13, Scheduling Order).

Plaintiffs now move for a preliminary injunction enjoining enforcement of the Gramercy parade permitting ordinance pending a final decision on the merits in this proceeding. The motion for preliminary injunctive relief seeks *prospective* injunctive relief to protect against *future* violations of Plaintiffs' First Amendment rights. Relief specific to Plaintiffs' claim that their First Amendment rights were violated in October 2020 when they were unable to march in Gramercy (redress for conduct that occurred *in the past*) is not at issue in Plaintiffs' motion for preliminary injunctive relief.

Plaintiffs contend that there are multiple constitutional problems with the

Gramercy ordinance which they believe makes their likelihood of success on the merits very high. Defendants dispute each of Plaintiffs' contentions regarding the constitutionality of the parade permit ordinance.[2]

## II.   Discussion

The four elements that a plaintiff must establish to secure a preliminary injunction are (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5ᵗʰ Cir. 2011) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5ᵗʰ Cir. 2009)). A preliminary injunction is an extraordinary remedy and it should only be granted if the movant has clearly carried the burden of persuasion on all four elements. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5ᵗʰ Cir. 1985). Because preliminary injunctive relief is considered extraordinary in nature, the decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *Id.* (citing *State of Tex. v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5ᵗʰ Cir.1975); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5ᵗʰ Cir.1974)).

In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co.*

---

[2] The Court notes that although the parties refer to "ordinance" in the singular throughout their briefing, the Town of Gramercy's permitting scheme actually comprises several ordinances or sections each separately numbered and titled.

*v. Gambell,* 480 U.S. 531, 542 (1987)). Ultimately, however, the decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co.*, 760 F.2d at 621. Furthermore, because the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), the district court may in its discretion proceed to consolidate a preliminary injunction hearing with the trial of the motion for the permanent injunction. *Sonnier v. Crain*, 613 F.3d 436, 442 (5th Cir. 20210) (withdrawn in part on reh'g on other grounds) (citing *Dillon v. Bay City Constr. Co.,* 512 F.2d 801, 804 (5th Cir.1975); Fed. R. Civ. Pro. 65(a)).

To satisfy the first element of likelihood of success on the merits, courts look to the standards provided by the applicable substantive law. *Janvey*, 647 F.3d at 596 (citing *Roho, Inc. v. Marquis,* 902 F.2d 356, 358 (5th Cir.1990)). To show a likelihood of success on the merits for preliminary injunction purposes, the plaintiff must at least present a prima facie case but is not required to prove its entitlement to summary judgment. *Byrum*, 566 F.3d at 446 (citing *ICEE Distribs., Inc. v. J&J Snack Foods Corp.,* 325 F.3d 586, 596 n.34 (5th Cir.2003)); *Daniels Health Sci., LLC v. Vascular Health Sci., LLC*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey*, 647 F.3d at 595-96).

Because the temporal focus of preliminary injunctive relief is the time period during which the case is pending, and the concern is with the delay attendant with conducting a full trial on the merits, *see Camenisch*, 451 U.S. at 395, the likelihood of irreparable injury must also be evaluated in this timeframe. *See Winter*, 555 U.S. at 22. Even though the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction, *Deerfield*

*Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978); *Citizens for a Better Envir. v. City of Park Ridge*, 567 F.2d 689 (7th Cir. 1975)), the applicant must demonstrate for purposes of issuing a preliminary injunction that the irreparable injury is likely to occur "during the pendency of the litigation" before a trial can be held. *See Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990).

In this lawsuit Plaintiffs have raised both an as-applied challenge to the Gramercy ordinance as well as an overbreadth challenge, the latter being a species of facial attack. A facial challenge is an argument asking the court to hold that a particular law can never be validly enforced, whereas an as-applied challenge is an argument asking the court to hold that a law cannot be enforced in some particular set of circumstances.[3] *Sonnier*, 613 F.3d at 456 (Dennis, J., concurring in part and dissenting in part) (citing *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 893 (2010)). Although litigants are permitted to raise both as-applied and overbreadth facial challenges in First Amendment cases, the validity of a particular application of the law should ordinarily be decided first. *Serafine v. Branaman*, 810 F.3d 354, 362 (5th Cir. 2016) (quoting *Bd. of Trustees. v. Fox*, 492 U.S. 469, 485 (1989)). Generally the court

---

[3] In the First Amendment context, a plaintiff asserting a facial challenge who cannot demonstrate that the statute is *always* invalid, *i.e.*, recognizes that there may be *some* legitimate applications of it, may alternatively succeed by establishing "overbreadth," in other words that the statute is impermissibly overbroad because a *substantial number* of its applications are unconstitutional. *Sonnier*, 613 F.3d at 443 n.6 (citing *Grange,* 128 S. Ct. at 1191 n.6; *New York v. Ferber,* 458 U.S. 747, 769 (1982)). Plaintiffs refer to overbreadth in their briefing but their arguments are more consistent with a traditional facial attack, in other words, one based on the contention that the law at issue can never be validly enforced.

will proceed to determine an overbreadth issue only if the statute would be valid as applied. *Id.* (quoting *Fox*, 492 U.S. at 484-85). Applying the overbreadth doctrine is "strong medicine" and is more difficult to resolve than the as-applied challenge since it "requires consideration of many more applications than those immediately before the court." *Id.* The court should not seek to provide relief to non-parties when a narrower remedy, *i.e.*, the remedy associated with the as-applied challenge, will fully protect the litigants. *Id.* (quoting *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 477-78 (1995)). The Supreme Court has explained why facial challenges are disfavored and the reasons are many.[4] *Wash. State Grange v. Wash. State Repub. Party,* 552 U.S. 442, 450 (2008). And in assessing the facial validity of a statute or regulation the court must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases. *Grange*, 552 U.S. at 449–50 (citing *United States v. Raines,* 362 U.S. 17, 22 (1960)). Simply, a facial challenge to a statute is the most difficult challenge to make. *Sonnier*, 613 F.3d at 443 (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).

Plaintiffs' arguments in support of preliminary relief go to their facial challenge,

---

[4] As the Supreme Court explained in *Grange, supra*, "[f]acial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Grange*, 552 U.S. at 450–51 (internal citations and quotations omitted).

and the preliminary relief that they seek is the broadest remedy possible in this case—
wholesale invalidation of Gramercy's parade permitting scheme—which if granted would
have ramifications far beyond this case. The Court is persuaded that the preliminary
injunction that Plaintiffs are seeking is significantly broader in scope than what is
necessary to protect their First Amendment rights pending a final decision on the merits
in this proceeding, which is the Court's sole concern at this juncture. How the ordinance
might affect the rights of non-parties who are not before the Court is not a concern to be
addressed in conjunction with preliminary relief. If the wholesale facial invalidation of the
Gramercy parade permitting scheme is ultimately proven to be appropriate, then that
"strong medicine" should occur as an outgrowth of the adjudication of Plaintiffs' as-
applied challenge, *Sonnier*, 613 F.3d at 457 (Dennis, J., concurring in part and
dissenting in part), which generally is judged on a developed factual record, *Educ.
Media Co. at Va. Tech v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (citing *Richmond
Med. Ctr. for Women v. Herring,* 570 F.3d 165, 172 (4th Cir.2009) (en banc)), or at the
hearing/trial for permanent injunctive relief where evidence would be taken.[5]

      That said, the fact that Defendants granted Plaintiffs' permit application in a
unanimous 5-0 vote, contingent upon Plaintiffs posting the required bond, and that the
sole reason that Plaintiffs did not obtain the permit is that they failed to timely post the

---

[5] Furthermore, because the permitting scheme in general serves legitimate purposes for
the municipality, and because permitting schemes like the one in Gramercy, including those
that involve a fee, are permissible under the First Amendment, the Court is hesitant to
believe that the broad injunction that Plaintiffs are currently requesting will be appropriate or
necessary to cure any First Amendment problems. If Plaintiffs ultimately prevail in
demonstrating that any given aspect of the ordinance is unconstitutional then the better
approach would likely be to simply narrowly enjoin enforcement of the specific section of the
ordinance causing the problem.

$10,000 bond required by § 50-44(10), militates in favor of the Court's conclusion that the preliminary injunction that Plaintiffs are seeking far exceeds what is necessary to protect their First Amendment rights pending a final decision on the merits in this proceeding. Pretermitting for another day the question of whether the other sections of the ordinance that Plaintiffs have identified as problematic are in fact unconstitutional, it remains that the sole impediment to their being able to obtain a permit to march in October 2020 was the section pertaining to the $10,000 bond requirement. And if Plaintiffs are going to attempt to exercise their First Amendment rights in Gramercy while this litigation is pending but before they can be heard at a trial on the merits (in other words the timeframe relevant for preliminary injunctive relief) then it is reasonable to assume that it would again be the $10,000 bond requirement that causes a problem for them. Thus, a more reasonable request for preliminary relief in this case is one narrowed in scope to the aspect of the ordinance that thwarted the October 2020 march, the $10,000 bond requirement.[6]

It is beyond dispute that political marches like the one that Plaintiffs had planned for October 17, 2020, and like those that they would seek to hold in the future are a form

---

[6] Aside from the fact that enjoining enforcement of the entire parade permitting scheme is not necessary to stave off any irreparable injury to Plaintiffs pending a trial, the Court is also convinced that such a broad injunction may disserve or harm the public interest. As Defendants point out, they must provide a safe environment not only for those who want to march but also for those who do not want to take part but simply want to enjoy a safe environment in which they can travel the streets without having the way impeded anytime someone wants to commandeer the roads for a march. It would surely be pandemonium in the town if marchers could choose to overtake the streets at will and impede traffic any time the mood hit. It is certainly plausible that the permitting scheme allows Defendants to know when and where the parading will occur so that the town's limited resources can best be applied.

of expression protected under the First Amendment. It is also beyond dispute that the Gramercy parade permit ordinance, which includes the $10,000 bond requirement, serves as a prior restraint that burdens this expressive activity. *See Int'l Women's Day March Plan. Cmtee. v. City of San Antonio*, 619 F.3d 346, 354 (5th Cir. 2010). As such, even though this burdening does not ipso facto render the permitting ordinance unconstitutional, *id.* (citing *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)), Defendants bear the burden of demonstrating that their parade permitting scheme is constitutionally permissive. *Id.* (citing *Hays Cty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992)). So even though the plaintiff will bear the burden of showing that he is entitled to the requested injunction (by establishing the preliminary injunction factors), the defendant who seeks to uphold a restriction on protected speech bears the burden of justifying it. *Byrum*, 566 F.3d at 446 (quoting *Edenfield v. Fane,* 507 U.S. 761, 770 (1993)). Thus, when considering the likelihood of success on the merits in conjunction with a request for preliminary injunctive relief, the district court should inquire whether there is a sufficient likelihood that the defendant will ultimately fail to prove its regulation constitutional. *Id.* (citing *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)).

An ordinance that requires a permit and a fee before authorizing public speaking, parades, or assemblies in a public forum is without question a prior restraint on speech. *Forsyth Cty v. Nation. Movement*, 505 U.S. 123, 130 (1992) (citing *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-51 (1969); *Niemotko v. Maryland*, 340 U.S. 268, 271 (1951)). And while there is a "heavy presumption" against the validity of prior restraints on speech, *id.* (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)), a governmental body may impose a permit requirement, including the payment of fees, on

those wishing to hold a march, parade, or rally, without necessarily running afoul of the First Amendment. *Id.* (citing *Cox*, 312 U.S. at 574-76); *Int'l Women's Day March Plan. Cmtee,* 619 F.3d at 354 ("The Supreme Court has long recognized that when groups hold events on public property, municipalities may impose fees as part of a permit scheme controlling this activity."). The question is whether the permitting scheme satisfies "certain constitutional requirements." *Id.* (quoting *Forsyth Cty.*, 505 U.S. at 130).

   When considering the "certain constitutional requirements" for a valid permitting scheme, the threshold question is whether the permit scheme allows the licensors to censor speech on the basis of its content. *Int'l Women's Day March Plan. Cmtee,* 619 F.3d at 354 (citing *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 320-21 (2002); *Forsyth Cty.*, 505 U.S. at 130-33). Content-based time-place-manner restrictions are examined under strict scrutiny, meaning they must be narrowly drawn to effectuate a compelling state interest. *Sonnier*, 613 F.3d at 441 (citing *Perry Educ. Ass'n v. Perry Local Educs. Ass'n*, 460 U.S. 37, 46 (1983)). Content-neutral time-place-manner restrictions are examined under intermediate scrutiny, meaning they are permissible so long as they are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. *Id.* (citing *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 213-14 (1997); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *Forsyth Cty.*, 505 U.S. at 130 (citing *United States v. Grace*, 461 U.S. 171, 177 (1983)); *Moore v. Brown*, 868 F.3d 398, 404 (5th Cir. 2017) (citing *Serv. Emp. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010)).

   The principal inquiry in determining content neutrality in speech cases generally,

and in time-place-manner cases particularly, is whether the government has adopted a regulation of speech because of its disagreement with the message it conveys. *Ward*, 491 U.S. at 791 (citing *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 295 (1984)). The government's purpose is the controlling consideration. *Id.* A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. *Id.* (citing *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47-48 (1986)). Government regulation of expressive activity is content-neutral so long as it is *justified* without reference to the content of the regulated speech. *Id.* (citing *Comm. for Creative Non-Violence*, 468 U.S. at 293; *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 425 U.S. 640, 648 (1981); *Boos v. Barry*, 485 U.S. 312, 320-21 1988)).

Furthermore, even an ostensibly content neutral licensing or permitting scheme that serves as a prior restraint on expression must be based on "neutral criteria" in order to ensure that the licensing decision is not based on the content or viewpoint of the speech being considered. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988)). Laws and regulations that subject the exercise of First Amendment freedoms to the prior restraint of a license or permit must contain "narrow, objective, and definite standards to guide the licensing authority" otherwise they are unconstitutional. *Id.* (quoting *Shuttlesworth*, 394 U.S. at 150-51); *Moore*, 868 F.3d at 405. When permitting discretion is unchecked by neutral criteria this is referred to as "the unbridled discretion doctrine" and it is closely related to viewpoint discrimination because it may lead to self-censorship or make it impossible to differentiate between a licensor's legitimate denial

of a permit and its illegitimate abuse of censorial power. *Id.* (citing *City of Lakewood*, 486 U.S. at 757-59).

Plaintiffs urge the Court to apply a strict scrutiny analysis to the $10,000 bond requirement because they contend that it is a content-based restriction on speech. Section 50-44(10) imposes a mandatory $10,000 bond requirement for any parade (which includes a march) without reference to any viewpoint, content, or message. The requirement does not provide a basis for Defendants to censor speech based on its content, at least facially.[7] And because the bond is set at a fixed price there is no issue of unbridled discretion, again at least facially, because the ordinance does not allow Defendants to examine the contents of the message to vary the amount of the bond. On its face, the bond requirement does not provide a mechanism for Defendants to discriminate based on viewpoint or disagreement with a speaker's message.

Plaintiffs' theory regarding the content-based nature of the bond requirement is based on their belief about what occurs when an applicant resorts to a private insurer to issue the bond. In such a case the applicant would have to pay a premium to the insurer, and Plaintiffs asseverate that private insurers do consider the content of the public event when determining what premium must be charged for the bond to issue. According to Plaintiffs, this leads to the denial of permits for individuals engaged in controversial speech and the imposition of higher premiums on disfavored speakers.

---

[7] The Court notes that Plaintiffs allege that the mayor had at first indicated to them that the bond would be waived but later told them that it would required. On the current record, which is not developed, there is no indication as to whether this offer of a helpful waiver occurs often and therefore whether Defendants use the requirement to discriminate on content on a case by case basis. This would of course be relevant to Plaintiffs' as-applied challenge because they were precluded from marching without the bond.

Plaintiffs point out that anyone in Gramercy who is unable to post the bond in cash would have to obtain one from a private insurer.

It is unclear to the Court whether this actually occurred in this case or actually occurs or whether Plaintiffs are inviting the Court to venture beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases, *see Grange*, *supra*. But as Defendants point out they have no control over what private insurers do when an applicant chooses to obtain a bond via that route; and the conduct of these private parties with whom Defendants have no relationship plays no part in the constitutionality of the ordinance, at least for purposes of its facial validity. The Court is persuaded that the ordinance's bond requirement is subject to intermediate scrutiny because it is content-neutral. Under intermediate scrutiny the bond requirement is permissible so long as it is narrowly tailored to serve a significant governmental interest and it leaves open ample alternative channels for communication of the information.

Defendants, who must establish that these requirements are satisfied with respect to the bond requirement, explain that the purpose of the bond is to guarantee safety and insure that the permit holder will comply with the ordinance and the information posted in the application. According to Defendants it is clear that the bond is used for regulatory purposes to guarantee safety and insure that the permit-holder remains bound to the information they include in their application. Defendants explain that the bond offers a baseline level of protection from potential damages to the Town, its citizenry and those participating. (Rec. Doc. 18, Opposition at 8-9).

These justifications are offered via argument from counsel rather than from a declaration or affidavit from the appropriate town officer. And the Court remains

perplexed as to how the bond actually works, for instance, when is it forfeited? But Defendants may very well demonstrate at trial that the bond requirement serves the interests identified in their memorandum and that those interests are significant.

The narrow tailoring of the bond requirement in light of its significant amount, whether that seemingly onerous amount ($10,000) leaves open ample alternative channels for communication of information, is less clear. Plaintiffs point out that the dollar amount is so high that the bond requirement constitutes a flat tax on speech and that it is impermissible for that reason. In *Forsyth, supra*, the Supreme Court made clear that it has never held that only nominal charges are constitutionally permissible.[8]  505 U.S. at 137. Thus, while the $10,000 bond requirement is not automatically invalid because of its size, Defendants really have not explained why the amount is so high. The amount raises concerns not that Defendants will discriminate based on content but rather whether speech will be suppressed altogether because speakers may be dissuaded from trying to obtain a permit.

Defendants argue via their counsel that there are multiple ways for an organization to post a bond, "including by posting a couple of hundred dollars at the most to secure their permit, they are not required to come up with $10,000 before they can acquire a permit," (Rec. Doc. 18, Opposition at 10). If this is the case then the prospects of the validity of the bond requirement appear much brighter. But this much is

---

[8] This clarification is important because Plaintiffs rely upon *Forsyth* and cases that predated the decision for their flat tax argument. Regarding the *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), decision that Plaintiffs cite, the *Forsyth* Court explained that the tax at issue was invalid because it was unrelated to a legitimate state interest, not because it was of a particular size. 505 U.S. at 137.

clear—Plaintiffs diligently tried to comply with the bond requirement to obtain a parade permit in October 2020 but apparently Defendants did not communicate to Plaintiffs that for a nominal amount they could have obtained the bond. Defendants now make it sound so easy but Plaintiffs complain that there is no specificity or articulated guidelines or process by which a bond may be obtained, so in error they assumed that they had to post $10,000 in cash, which they did not have. (Rec. Doc. 41-1, Memorandum at 2). The Court shares Plaintiffs' concerns about the lack of clear guidance about how the bond works and the options available, and this is especially true given the substantial dollar amount of the bond. Again, what appears permissible facially may be vulnerable to an as-applied challenge.

In sum, for the reasons explained above, the Court declines to issue preliminary injunctive relief based on a broad facial challenge. Further, the Court notes that the time period preceding a trial on the merits in this case (again the timeframe pertinent for preliminary injunctive relief) is exceptionally long because the trial has been set for March 14, 2022, even though the case was filed in November 2020 and the number of witnesses who would testify in this case should be minimal. It is the Court's understanding that this remote trial date was scheduled in order to allow full participation by the excellent student attorneys who are working on this case. If Plaintiffs remain concerned that their First Amendment rights may be violated prior to the time that a trial can be held then the Court is amenable to a request (made via motion) to move the trial date up. This case will be tried to the bench so the Court could accommodate a trial this summer. The Court will not adjudicate the case in piecemeal fashion, however, so if the parties want an earlier trial date then all claims must be

presented at that earlier date.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Preliminary Injunction (Rec. Doc. 14)** filed

by the plaintiffs, Sharon Lavigne and RISE St. James is **DENIED**.

May 6, 2021

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE